Nott, Ch. J.,
delivered the opinion of the court:
When Congress convened in December, 1898, it was known to members, as to the public generally, that the War Department, at the close of the war with Spain, had anticipated the legislation which had followed all preceding wars by granting, in effect, to volunteers when mustered out of the service one month’s or two months’ extra pay according as they had served within or beyond the limits of the United States. This grant of extra pay had been indirectly accomplished by general orders directing regiments to return to the place of enrollment, and, on their arrival there, granting one month’s or two months’ leave of absence or furlough to officers and enlisted men before muster out. That is, the pay went on while the officers and men were on leave of absence. Congress, therefore, by the Act 12th January, 1899 (30 Stat. *215 L., 784), established a future policy for the Government in such cases by providing that “all officers and enlisted men belonging to volunteer organizations hereafter mustered out of the service who have served honestíy and faithfully beyond the limits of the United States shall be paid two months’ extra pay on muster out and discharge from the service, and all officers and enlisted men belonging to organizations hereafter mustered out of the service who have served honestly and faithfulty within the limits of the United States shall be paid one month’s extra pay on muster out and discharge from the service;” and .in effect prohibited the War Department from thereafter granting leaves of absence or furlough to volunteers after reaching the place of muster out.
At a later date Congress became aware of the fact that there was a second class of officers and enlisted men who had not received the benefits of leave of absence or furlough, but who had remained in service and on dutjr up to the time of their muster out, and who, having been mustered out prior to the 12th of January, 1899, were not entitled to the benefits of the statute of that date. Manifestly such officers and men were as much entitled to the extra pay as the others. Accordingly Congress, by the Act 26th May, 1900 (31 id., 217), enacted that those who had served faithfully during, the war with Spain and had “been honorably discharged without furlough” should be paid the extra pay.
At the same time Congress was aware of the fact that there was still a third class of volunteer officers, viz, officers who had not been granted leave of absence by the War Department and who were not included in the statutory provisions herein-before quoted. These were officers of volunteers doing staff duty. As to them the orders of the War Department were in the following form:
“GENERAL Orders, “No. 46. }
“Headquarters of the Army, “Adjutant-General’s Office, “ Washington, March 13, 1899.
“By direction of the President the follo.wing-named officers are honorably discharged from the Volunteer Army of the United States by the Secretary of War, to take effect on the dates hereinafter specified, their services being no longer required:
*216 U. S. VOLUNTEER SIGNAL CORPS.
*x* * * * *
“Second Lieutenant Byron B. Daggett, May 12, 1899.
* . * * * *
“Officers of regiments in the Regular Army will proceed to-join their proper commands. The officers who belong exclusively to the Volunteer Army will proceed to their homes. The travel enjoined is necessary for the public service.
“By command of.Major-General Miles:
“H. C. Corbin,
“ Adjutant- General”
(This order, in the claimant’s case, was amended by Special Orders, No. Ill, so as to take effect June 2, 1899, instead of May 12.)
Here, again, it was manifest that these officers were as well entitled as the others to the extra pay; and accordingly Congress, by the same act, provided that the act of January 12, 1899, “shall extend to all volunteer officers of the general staff who have not received waiting-orders pay prior to-discharge.”
What Congress undoubtedly intended by this was that the benefit of the act of 12th January, 1899, should extend to officers generally who, doing duty on the staff, were discharged pursuant to the general orders of the War Depart-, ment allowing them waiting-orders pay, but who had not received the intended benefit of the Department’s order. The purpose of the statute was not to provide general or permanent legislation, but to place all staff officers who had not received leave of absence and who had been discharged from the service in the manner indicated by the orders of the War Department upon substantially the same footing as those provided for bj*- other legislation.
The general orders 46, before quoted, were issued at the War Department, in the city of Washington, on the 13th of March, 1899, and they prescribe as the time when the claimant’s discharge should take effect the 12th of May. This period was one day less than two calendar months. Moreover, the order had to be' transmitted to the officer through military channels, and he was then on active duty in the inte *217 rior of Cuba. Furthermore, when such an order reaches an officer so placed, it requires the order or assent of his immediate commanding officer to enable him to avail himself of it. An officer on reading a general order of this character in a newspaper could no more abandon the immediate duty assigned to him on the instant, and on his own motion, than a servant whose month or year of service has expired can throw down the reins, in the public highway and leave the horses intrusted to him to find their way home by themselves. It must, therefore, have been manifest to Congress that these orders of the War Department did not in all cases secure to these staff officers two months of waiting-orders service, equivalent to two months of leave of absence; and it must also have been manifest to Congress that some of these officers received the benefit intended by the War Department only in part. That is to say, some of them were on waiting orders at home, rendering no actual service for a fraction of a month or a fraction of two months.. Knowing these facts, Congress provided for such cases. An officer who had been on waiting-orders service for a part of the time was not to recover “one month’s extra pay” or “two. months’ extra pay,” as provided by the act of 12th January, 1899; but the pay which he should recover was to be computed “at the rate of one month’s” or of “ two months’ pay.”'
If an officer who was entitled to two months’ pay had received only one month’s, Congress intended that under this statute he should be paid the other month’s. It neither •meant that he should recover two months’ because he had been paid less than two months’, nor that he should lose one-half of what he was entitled to because he had been paid one-half of what he was entitled to. The cardinal principle of all this legislation is that volunteer officers shall receive one month’s or two months’ extra pay, either directly or indirectly, either by the payment of two months’ or one month’s pay, or an equivalent of one month’s or two months’ leave of absence, or the other equivalent of being at home on waiting orders when their time was substantially their own. Nothing can be plainer than that Congress did not intend to draw arbitrary or fanciful distinctions, but did intend to place all officers of volunteers who served in the war with Spain, as near as might be in this matter of extra pay, upon the same footing.
*218 As has been said, the general orders of the War Department were issued in the city of Washington on the 13th of March. At that time the claimant assigned to duty was rendering service in the interior of Cuba. When and how the order of the War Department reached him does not appear, but it does appear that he continued on active staff service up to the 2d of April, when, sick of typhoid fever, he was sent to the military hospital. On the 6th of April he was transferred to a hospital ship and taken to the general hospital at Fort Monroe, where he remained until and including the 11th of May. It does not appear upon what day he arrived at his home in Buffalo; but it is a matter of common knowledge that that journey would take about two days, so that his arrival in Buffalo may be regarded as upon the 13th. Finally, he was discharged, according to the terms of .the amended order, on June 2.
On these facts it is contended on the part of the claimant that, not having been upon waiting orders for the full term of two months, he is entitled to recover the full amount of two months’ extra pay; and on the part of the defendants that, having rendered no service from the time when he went into the hospital in Cuba, he is entitled to recover nothing. From both of these views the court is constrained to differ.
The counsel for the defendants has maintained that it was not the legislative intent to provide a double gratuity in the way of extra paj^ for those who had received an equivalent thereof in the way of pay when on leave of absence or on waiting orders. The court fully agrees with this interpretation of the statute. The question then is, What was the “equivalent thereof” which this officer received?
This equivalent has been characterized on behalf of the defendants as “ a mere gratuity on the part of the War Department — as an indulgence.” So far as the defendants’ rights are concerned this is a correct characterization. The question is, What is the extent of the gratuity conferred and received?
It is well settled by statute, by regulations, by judicial decisions, that volunteer officers and enlisted men are entitled to be paid up to the time of their discharge or muster out, and that they are entitled to be discharged or mustered out *219 at the place where they were enrolled or enlisted; and where one is not actually mustered out at the place of enrollment the same result is reached, constructively, by travel pay, or mileage, or transportation in kind, or actual expenses. Until the point is reached where an officer’s legal rights stop, the War Department has no gratuity or indulgence to confer. Paying a man what one owes him is not, in contemplation of law, a favor; delivering to a man that which is his own can never be regarded as a gratuity. Under the orders of the War Department the claimant was bound to proceed to his home, and that was the only obligation laid upon him. In some cases it might be a question whether he obeyed the order with diligence and in good faith. In this case no such question arises. He proceeded to his home in the usual manner of a sick soldier, and if his return was delayed it was not through an}T fault of his own,, but because, of a disease contracted in the service. When he reached his home he had obeyed the order and performed the duty assigned him. In the'ordinary course of military affairs he would have been discharged on that day. The fact that-the Department had ordered his discharge not to take place until the 2d of June was a thing over which he had no control and which he had no means of modifying or rejecting. But for the purposes of this action his paj’ as an officer in service must be regarded as having ceased on the day when he arrived at his home. From that time on he was enjoying the benefit of being on waiting orders and receiving waiting-orders pay. The conclusion of the court is that he is entitled to two months’ extra pay, less twenty days’ waiting-orders pay, which he has received.
The judgment of the court is that the claimant recover $166.66.